# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANTONIO J. WARFIELD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:19-cv-00650 |
| | ) Judge Trauger |
| RUSSELL WASHBURN, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM

Antonio J. Warfield, then an inmate at Trousdale Turner Correctional Center in Hartsville, Tennessee,[1] filed this pro se civil rights action under 42 U.S.C. § 1983. (Doc. No. 1.) He names seven Trousdale Turner officials as defendants—Russell Washburn, Shane Cosby, S. Roach, Daniel Jenkins, Nakynia Jackson, Sergeant Hudson, and Sergeant Lester. (*Id.* at 2–3.) He also refers to Case Manager Jones as a defendant in the body of the complaint. (*Id.* at 5.) The plaintiff filed an application to proceed in this court without prepaying fees and costs. (Doc. No. 6.)

## I. Application to Proceed as a Pauper

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from the plaintiff's *in forma pauperis* application that he cannot pay the full filing fee in advance, his application (Doc. No. 6) will be granted. The $350.00 filing fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b)(1).

## II. Initial Review

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the court must review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon

---

[1] The plaintiff is now confined at the West Tennessee State Penitentiary in Henning, Tennessee. (Doc. No. 6 at 1.)

which relief may be granted, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915A. The court must also construe a *pro se* complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility, *see Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

## A. Factual Allegations

The plaintiff's allegations primarily pertain to several disciplinary convictions issued by Trousdale Turner officials.

### 1. Alleged Tampering with Security Equipment

The plaintiff alleges that, on July 3, 2019, he had a "misunderstanding" with Assistant Warden Pittman. (Doc. No. 1 at 5.) Pittman told Sergeants Lester and Cockrell to put the plaintiff in a holding cell at intake to "cool off." (*Id.*) Four Trousdale Turner officials—Sergeant Lester, Case Manager Jenkins, Unit Manager Roach, and Case Manager Jones—retrieved the plaintiff two hours later and moved him to a "small shower" in the segregation unit for five hours as punishment. (*Id.* at 5–6.) Lieutenant William saw the plaintiff in the shower and told him that the four Trousdale Turner officials were "wrong for holding him [in] the shower for over 5 hours." (*Id.* at 6.) William called Captain Maxwell over the radio to come see the plaintiff in the shower, and Maxwell told William to let the plaintiff out and send him back to this cell. (*Id.*) The plaintiff returned to his cell at 1:30 am. on July 4. (*Id.*)

The next day, Sergeant Lester and Case Manager Jenkins came to the plaintiff's cell and told him that Captain Maxwell was "wrong for sending him back to his cell." (*Id.*) Lester and Jenkins told the plaintiff he was going to segregation. (*Id.*) The plaintiff asked why, and they told him he would "find out when [he got] over there to the hole." (*Id.*)

2

After Sergeant Lester and Case Manager Jenkins put the plaintiff in a segregation cell, Jenkins told the plaintiff that he was there for "tampering with security equipment." (*Id.* at 7.) Jenkins gave the plaintiff a copy of a disciplinary report dated July 3, 2019, allegedly reading as follows:

> On 7/3/2019 at approximately 1100 hours, I case manager Jenkins was conducting a cell search of D-A-107. During the cell search I discovered that the locking mechanism had a cardboard substance preventing it from securing properly. Inmate Antonio Warfield #483286 is assigned to this cell and was currently living in the cell. Therefore I am charging inmate Warfield with tampering with security device.

(*Id.*) Unit Manager Roach allegedly signed the disciplinary report as the "reviewing designated supervisor" and the "senior security officer," which the plaintiff states is in violation of Tennessee Code Annotated 41-24-110(5). (*Id.*)

On July 5, 2019, Sergeant Hudson conducted a disciplinary hearing at the plaintiff's cell without disciplinary board members present. (*Id.* at 8.) Hudson found the plaintiff guilty of the charge in Jenkins's report and sentenced the plaintiff to 10 days in punitive segregation. (*Id.*)

### 2. Other Alleged Disciplinary Infractions

The plaintiff also alleges that, on July 3, 2019, he received two write-ups for "defiance" from Chief Cosby and Case Manager Jackson, respectively. (*Id.* at 9.) The plaintiff alleges that Sergeant Hudson held disciplinary hearings on these write-ups without board members present and then found the plaintiff guilty of each alleged infraction. (*Id.*) For Cosby's report, Hudson sentenced the plaintiff to 20 days in punitive segregation, and, for Jackson's report, Hudson sentenced the plaintiff to 10 days in punitive segregation. (*Id.*)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the court applies the same standard as under

Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## C. Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015)).

### 1. Conditions of Confinement

The plaintiff alleges that four Trousdale Turner officials placed him in a small shower in the segregation unit for five hours as punishment. The Eighth Amendment protects convicted inmates from the "unnecessary and wanton infliction of pain," *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citation omitted), which imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). "An Eighth Amendment conditions of confinement claim [] contains both an objective and a subjective component." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Here, the plaintiff fails to satisfy the objective component of this claim, which "requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The alleged confinement in a small shower lasted only about five hours, and "[a]llegations of temporary inconveniences are insufficient to state a claim." *Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) (citing *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2011)). Moreover, while the plaintiff alleges that the shower itself was small, his allegations do not reflect that the conditions within the shower were objectively inhumane or subjected him to a heightened risk of injury. The plaintiff's alleged placement in the shower may have been unpleasant or uncomfortable, but this does not rise to the level of an Eighth Amendment violation. *See id.* (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."). Accordingly, the plaintiff fails to state a claim for constitutionally inadequate conditions of confinement.

### 2. Due Process

Next, the plaintiff asserts that Trousdale Turner staff violated his due process rights in the course of issuing him three disciplinary convictions and sentences. The Fourteenth Amendment provides that prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). To state a procedural due process claim, the plaintiff must show that (1) he had a protected liberty or property interest; (2) he was deprived of that interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of that interest. *Janinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). The first prong of this

claim is a threshold requirement, s*ee Wilkinson v. Austin*, 545 U.S. 209, 221 (2005), meaning that "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Wilkinson*, 545 U.S. at 224).

Prisoners have a narrower set of constitutionally protected interests than individuals who are not incarcerated. *Wolff*, 418 U.S. at 556. For instance, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Accordingly, the plaintiff cannot state a procedural due process claim based on his initial placement in punitive segregation.

"[D]ue process concerns" may be implicated, however, where a prisoner faces "prolonged or indefinite confinement" in more restrictive conditions. *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Wilkinson*, 545 U.S. at 224). But to trigger these due process concerns, the prisoner's conditions of confinement must "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Only if a prisoner's conditions are "atypical and significant" does a prisoner satisfy his or her threshold burden of establishing a constitutionally protected interest.

The plaintiff has not met this threshold burden here. He alleges that Sergeant Hudson held three disciplinary hearings without disciplinary board members present, and then imposed the following three sentences: 10 days in punitive segregation for tampering with security equipment; 20 days in punitive segregation for defiance; and another 10 days in punitive segregation for defiance. Liberally construing these allegations, the court assumes that the plaintiff's sentences

6

amounted to a total of 40 days in more restrictive conditions of confinement. Nonetheless, for two reasons, the plaintiff has not demonstrated that this alleged 40-day confinement in punitive segregation is an "atypical and significant hardship" under *Sandin*. *See Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484).

First, the plaintiff does not provide any details about the restrictions imposed as a result of being placed in punitive segregation. Without explaining how the conditions in punitive segregation differ from his ordinary conditions, the plaintiff cannot establish that his disciplinary convictions resulted in a hardship that is "atypical and significant . . . in relation to the ordinary incidents of prison life." *See Williams v. Lindamood*, 526 F. App'x 559, 562–63 (6th Cir. 2013) (holding that an inmate had "not established that the change in the conditions of his confinement was 'atypical and significant,'" in part, because the inmate had not produced facts "establishing the ordinary conditions of confinement"); *Joseph v. Curtin*, 410 F. App'x 865, 869 (6th Cir. 2010) (holding that an inmate had "not demonstrated that a liberty interest was implicated" because his "complaint [did] not include any allegations about" his new security classification level "to suggest that it imposes an atypical and significant hardship").

Second, the plaintiff's total sentence is too short to implicate due process concerns. The Sixth Circuit has held that periods of confinement significantly longer than 40 days do not establish a constitutionally protected interest. *See Bishawi*, 628 F. App'x at 344 (holding that 69 days in segregation was not an atypical or significant deprivation of liberty); *see also Powell*, 720 F. App'x at 227 ("Powell's six-month confinement in administrative segregation is insufficient to constitute an atypical and significant hardship and therefore does not implicate his due process rights."); *McMann v. Gundy*, 39 F. App'x 208, 210 (6th Cir. 2002) (holding that five months in administrative segregation was "not excessive or unusual"); *but see Harden-Bey v. Rutter*, 524

F.3d 789, 792–93 (6th Cir. 2008) (finding that placement in confinement for three years without a definite end-point may be "atypical and significant").

For these reasons, the plaintiff has not demonstrated that the challenged disciplinary proceedings resulted in conditions of confinement that "impose[] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. The court, therefore, need not reach the question of whether Sergeant Hudson afforded the plaintiff adequate procedural rights prior to allegedly sentencing him to 40 days in punitive segregation. That is, even taking as true the plaintiff's allegation Sergeant Hudson conducted the plaintiff's disciplinary hearings without disciplinary board members present, this conduct does not rise to the level of a due process violation because the plaintiff does not carry his threshold burden of establishing a constitutionally protected interest. *See Pickelhaupt*, 364 F. App'x at 224 (citing *Wilkinson*, 545 U.S. at 224) ("[T]he question of what process is due is relevant only if the inmate establishes a constitutionally protected interest.").

The plaintiff's insistence that Trousdale Turner staff failed to adhere to state law does not alter the court's conclusion. Tennessee Code Annotated § 41-24-110(5) provides that the Tennessee Department of Correction ("TDOC") Commissioner cannot delegate certain authority or responsibility to a prison contractor, including the authority to place an inmate under less restrictive custody, place an inmate under more restrictive custody, and take disciplinary action. According to the plaintiff, Trousdale Turner staff violated this law by signing their names to the plaintiff's disciplinary reports without the approval of the TDOC Commissioner or the Commissioner's designee. (Doc. No. 1 at 7–9.) Even if the prison staff violated state law in the manner described by the plaintiff, however, this would not amount to a violation of the plaintiff's right to due process. *See Howard v. Tenn. Dep't of Corrs.*, 1:12-cv-0004, 2012 WL 3403117, at

*6 (M.D. Tenn. July 11, 2012) ("Merely stating that [the defendants] violated a Tennessee state statute detailing the relationship between state prisons and private contractors does not rise to the level of a due process violation."), *report and recommendation adopted*, 2012 WL 3405697 (M.D. Tenn. Aug. 14, 2012). Accordingly, the plaintiff fails to state a procedural due process claim.

### 3. State Law Claim

Finally, the plaintiff asserts that the defendants engaged in the tort of malicious harassment, in violation of Tennessee Code Annotated § 4-21-701. (Doc. No. 1 at 2.) Because the plaintiff fails to state a claim under Section 1983, the court will decline to exercise supplemental jurisdiction over this state law claim. *See Brown v. Cuyahoga Cty., Ohio*, 517 F. App'x 431, 436 (6th Cir. 2013) (quoting 28 U.S.C. § 1367) (holding that a court may "decline to exercise supplemental jurisdiction over state-law claims if 'the district court has dismissed all claims over which it has original jurisdiction'").

## III. Conclusion

As explained above, the plaintiff fails to state a claim upon which relief can be granted under Section 1983, and the court declines to exercise supplemental jurisdiction over any state law claims raised in the complaint. Additionally, the court will certify that any appeal in this matter would not be taken in food faith, and will therefore deny the plaintiff leave to proceed as a pauper on any appeal. 28 U.S.C. § 1915(a)(3).

The court will enter an appropriate order.

_____
ALETA A. TRAUGER
United States District Judge